598 F.2d 869
 Julia FABULA, Individually and on behalf of all others
similarly situated and Anna Arnold, by her
Guardian, Mami Younger, and Mary M.
Burns, Laura H. Maggitti, Appellants,
v.
Charles R. BUCK, Jr., in his capacity as Secretary of the
Department of Health and Mental Hygiene, State of
Maryland, Appellee.
 No. 79-1011.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 13, 1979.
Decided May 21, 1979.
 
 Anne K. Pecora, Baltimore, Md., Legal Services to the Elderly, Waxter Center for Senior Citizens, James J. Lyko, Baltimore, Md. (Dennis M. Sweeney, Baltimore, Md., Administrative Law Center, Legal Aid Bureau, Inc., on brief), for appellants.
 Stephen J. Sfekas, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen., Baltimore, Md., on brief), for appellee.
 Before WINTER and HALL, Circuit Judges, and YOUNG,* District Judge.
 K. K. HALL, Circuit Judge:
 
 
 1
 Plaintiffs in this class action represent aged, blind, or disabled Maryland residents who are considered "medically needy" because their incomes, while high enough to make them ineligible for Supplemental Security Income (SSI) benefits,[1] are insufficient to meet the costs of necessary medical services. They challenge a state regulation, applicable to them but not to SSI recipients, under which they were denied Medicaid benefits because they had transferred property for the purpose of receiving Medicaid benefits or circumventing the state's recovery procedures. The district court upheld the challenged regulation, ruling that it comports both with constitutional guaranties of due process and equal protection and with the applicable requirements of the Social Security Act. In this appeal, plaintiffs argue only that the regulation, in imposing a more restrictive Medicaid eligibility requirement on them than on SSI recipients, conflicts with Title XIX of the Social Security Act. We agree, and accordingly REVERSE the judgment of the district court and REMAND for entry of an appropriate order enjoining enforcement of the regulation.
 
 I.
 
 2
 The State of Maryland has voluntarily elected to participate in Medicaid, a cooperative federal-state program established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396k, and to provide payment for medical services for two groups of individuals: those who are eligible for financial assistance through state or federal welfare programs including SSI (the "categorically needy"), and those whose incomes or resources, while exceeding the eligibility requirements for those welfare programs, are insufficient to pay for needed medical care (the "medically needy"). By its participation in the Medicaid program, Maryland receives substantial federal funds and, in turn, agrees to comply with the program requirements contained in the Social Security Act and in regulations promulgated by the Secretary of Health, Education and Welfare (HEW).[2]
 
 
 3
 The Department of Health and Mental Hygiene of the State of Maryland, as the agency responsible for administering the state's Medicaid program, has promulgated regulations which, Inter alia, establish eligibility requirements for the medically needy program. Under the regulations governing assets, an individual is eligible for medical assistance only if his assets are valued at $2500 or less.[3] Code of Maryland Regulations (COMAR) 10.09.01.10(F). Certain types of property, including the individual's home and income-producing real property, are not counted in determining whether the individual's assets are within this $2500 limitation. COMAR 10.09.01.10(B). Although the value of these assets thus does not affect Medicaid eligibility, the property is potentially subject to provisions whereby the state, under certain circumstances,[4] may recover from the estate of a deceased Medicaid recipient the cost of medical assistance benefits it has provided. COMAR 10.09.01.17(C).
 
 
 4
 A further provision of the assets regulation, and the subject of plaintiffs' challenge, provides that a transfer of assets will, under certain conditions, render an individual ineligible for Medicaid benefits for a period not exceeding three years:
 
 
 5
 D. Transfer of Assets.
 
 
 6
 (1) An applicant who assigns or transfers assets, including those (which would be excluded in determining financial eligibility,) with the intent of becoming eligible for Medical Assistance or to circumvent the Program's recovery procedures during the 3 years before filing application is ineligible if the transfer results in a loss of a resource which would have been available to meet medical expenses or in the loss of a potential source of recovery . . .
 
 
 7
 (2) Assets transferred by a recipient, while receiving Medical Assistance, for the purpose of continuing to receive assistance or to circumvent recovery procedures, and without the consent of the local department of social services, are considered an existing asset affecting current and continued eligibility for a period not to exceed 3 years.
 
 
 8
 (3) The unreported transfer of assets for the purpose of circumventing the provision of § D(1) and (2), above, will result in the recipient's ineligibility . . . COMAR 10.09.01.10(D).
 
 II.
 
 9
 Plaintiffs Julia Fabula, Anna Arnold and Mary Bruns, aged 74, 80 and 84, respectively, would be eligible for SSI benefits except for their incomes. Because they required medical treatment which they could not afford, they applied for medically needy benefits under the Maryland Medicaid program.[5] Within three years prior to applying for benefits, each woman had transferred to relatives all or part of her interest in her home, an asset not counted in determining financial eligibility for benefits, but potentially subject to the state's recovery from her estate. Because of these transfers, each was denied Medicaid benefits pursuant to the Maryland transfer of assets regulation.
 
 
 10
 Plaintiff Laura Maggitti, aged 79, had been receiving medically needy benefits for several years because her $286 monthly income was insufficient to pay for the medical care she required. When she later transferred to her children part of her interest in income-producing property, also excluded in determining financial eligibility but subject to the state's recovery procedures, she was notified that under the state regulation she was no longer eligible for benefits.
 
 
 11
 Plaintiffs then brought this class action in district court on behalf of all aged, blind or disabled Maryland residents who have been or will be denied Medicaid benefits because they transferred assets in a manner proscribed by the state regulation.[6] They sought declaratory and injunctive relief, claiming that the regulation denies them due process and equal protection, and that it conflicts with Title XIX of the Social Security Act by imposing a more stringent eligibility requirement on the medically needy than on SSI recipients.[7] The district court rejected all of plaintiffs' contentions but enjoined defendant, the Secretary of the state's Department of Health and Mental Hygiene, from denying benefits to the named plaintiffs on the basis of the transfers, pending a final judgment by this court.
 
 
 12
 Plaintiffs do not seek review of the district court's rejection of their constitutional claims. This appeal concerns the sole question of whether the regulation is prohibited under the terms of the Social Security Act.
 
 III.
 
 13
 The basis of plaintiffs' argument is the provision of the Social Security Act, 42 U.S.C. § 1396a(a)(10)(C)(i), which requires states such as Maryland which have chosen to include the medically needy in their Medicaid plans to
 
 
 14
 mak(e) medical assistance available to all individuals who would, except for income and resources, be eligible for . . . supplemental security income (SSI) benefits . . . and who have insufficient . . . income and resources to meet the costs of necessary medical and remedial care and services.
 
 
 15
 The corresponding regulation promulgated by the Secretary of HEW provides that a state "must not use requirements for determining eligibility for optional coverage groups (the medically needy) that are . . . for aged, blind or disabled individuals, more restrictive than those used under SSI." 42 C.F.R. § 435.401(c). In another context,[8] HEW has amplified its interpretation of the statutory provision, stating that it
 
 
 16
 means that while a state might use more generous maintenance amounts in determining financial eligibility (i. e., medically needy levels . . . , disregards or asset exemptions) all other SSI eligibility criteria are to be used . . . (A)ll aged, blind and disabled persons . . . must have their eligibility determined using all SSI eligibility rules except for and only except for higher dollar amounts for income and resource eligibility levels. 42 Fed.Reg. 2685 (1977).
 
 
 17
 The Social Security Act expressly allows an applicant for SSI benefits, whose assets exceed that program's eligibility limits, to dispose of the excess assets in order to become eligible. 42 U.S.C. § 1382b(b). The individual is entitled to receive conditional SSI payments pending the disposal,[9] Id.; 20 C.F.R. §§ 416.1240-.1244, and during this period the state must provide Medicaid benefits to him. 42 C.F.R. § 435.120(b). A transfer of assets Prior to application for SSI has no effect on eligibility for benefits, even if retention of the property would have made the individual's assets exceed the eligibility limit. Social Security Claims Manual § 12507. A transfer made by an individual who is already receiving benefits generally does not affect eligibility if the individual's countable resources were within the applicable limit before the transfer. Id. § 12508.
 
 
 18
 Because of the preceding provisions, HEW officials have ruled, on at least three separate occasions, that state transfer of asset prohibitions similar to Maryland's are invalid because they impose more restrictive eligibility criteria on the medically needy than on SSI applicants, in violation of 42 U.S.C. §§ 1396a(a)(10)(C)(i).[10] We believe that these administrative interpretations are reasonable and consistent with the statute, and are entitled to be followed by the courts.[11] Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).
 
 
 19
 While we sympathize with Maryland's desire to restrict its medical assistance benefits to those most in need, "a State's interest in preserving the fiscal integrity of its welfare program by economically allocating limited . . . resources may not be protected by the device of adopting eligibility requirements restricting the class of (individuals) made eligible by federal standards." Townsend v. Swank, 404 U.S. 282, 291, 92 S.Ct. 502, 508, 30 L.Ed.2d 448 (1971).
 
 
 20
 The state argues, however, that the transfer regulation is not a substantive eligibility requirement, but simply a "collateral restriction to eliminate fraudulent practices," which applies only where a transfer was made with the intent of becoming eligible for assistance or circumventing the state's recovery procedures.[12] The district court accepted this analysis and found no express or implied restriction in the federal statute or regulations on the state's right to adopt such a "procedural regulation." We disagree.
 
 
 21
 We believe that the regulation is properly considered an eligibility requirement. Cf. Lavine v. Milne 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976) (state statute disqualifying home relief applicant who, with intent of qualifying for assistance, voluntarily terminates employment, is a "substantive requirement for eligibility," Id. at 586, 96 S.Ct. 1010; burden is properly placed on applicant to prove, as "an essential element of eligibility," the absence of "the impermissible benefit-seeking motive." Id. at 584, 96 S.Ct. 1010.)
 
 
 22
 Even if we were to accept the state's semantic distinction, we would still hold the regulation invalid. First, we question how the transfers made by plaintiffs, which would be expressly permitted under SSI guidelines, can be fraudulent acts under the Medicaid program simply because they are performed by the medically needy rather than by a SSI recipient.[13] Further, the regulation imposes a three-year suspension from benefits upon an administrative finding of culpability. It thereby conflicts with the Medicaid fraud provisions of the Social Security Act, which permit states to suspend an individual's eligibility only after he has been convicted of fraud in a criminal proceeding, and even then limits the period of such suspension to a maximum of one year. 42 U.S.C. § 1396h(a).
 
 IV.
 
 23
 We hold that the Maryland transfer of assets regulation, COMAR 10.09.01.10(D), conflicts with the provisions of the Social Security Act and may not be enforced so long as the state continues to accept federal funds under that Act. Townsend v. Swank, 404 U.S. at 292, 92 S.Ct. 502 (Burger, C. J., concurring). This case is remanded to the district court for entry of an appropriate order enjoining enforcement of the regulation, with provisions for notice to members of the plaintiff classes apprising them of this decision and of any administrative procedures available to them under state law by which they may receive a determination of eligibility for retroactive benefits. Quern v. Jordan, --- U.S. ----, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The district court shall determine the method of notice which is best calculated to reach the aged, blind and disabled class members without imposing an unreasonable burden on the state.
 
 
 24
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Joseph H. Young, United States District Judge for the District of Maryland, at Baltimore, sitting by designation
 
 
 [1]
 The SSI program, established under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c, provides federal financial assistance to eligible aged, blind and disabled persons
 
 
 [2]
 States are not required to participate in the Medicaid program, but a state choosing to do so must submit a medical assistance plan, in compliance with the various federal requirements, for approval by the Secretary of HEW. 42 U.S.C. §§ 1396, 1396a. Participating states are required, at a minimum, to provide medical assistance for the categorically needy and may, at their option, also provide benefits for the medically needy. 42 U.S.C. § 1396a(a) (10). Maryland has chosen to include both groups in its Medicaid program
 
 
 [3]
 Assets include cash savings, bank accounts, stocks, bonds, the cash value of life insurance, mortgages, real property and personal property. COMAR 10.09.01.10(A)
 
 
 [4]
 Recovery is limited to the value of benefits paid to a recipient aged 65 or over, and may not be effected if there is a surviving spouse or a disabled or minor child. 42 U.S.C. § 1396a(a)(18)
 
 
 [5]
 Each woman requires nursing home care which costs $700-$1000 per month. Fabula receives a total monthly income of $266; Arnold receives $192; Bruns receives $211
 
 
 [6]
 Two classes were certified by the district court: All aged, blind or disabled Maryland residents who transferred assets which are Excluded from consideration in determining eligibility and (1) whose applications for Medicaid were or will be denied because of the regulation (represented by Fabula, Arnold and Bruns) or (2) who had been receiving Medicaid benefits and were or will be declared ineligible due to the transfer regulation (represented by Maggitti.) Although the classes certified thus do not include individuals who transferred property which would be counted as an asset in determining financial eligibility, the arguments of both parties assume that this distinction is irrelevant to the issue of the validity of the regulation and our decision does not in any way depend on the distinction
 
 
 [7]
 The transfer of assets regulation applies only to the medically needy and no similar restriction is imposed on SSI applicants. Compare COMAR 10.09.01.06(A) With COMAR 10.09.01.02(A)(3)
 
 
 [8]
 The statement appears in the preamble to HEW regulations which forbid states to deem a spouse's income to be available to a Medicaid applicant in situations where the income would not be considered available under SSI guidelines
 
 
 [9]
 The applicant must agree to repay these conditional SSI benefits from the proceeds of the disposal, to the extent that the net proceeds plus the individual's other assets exceed the SSI eligibility limit. 20 C.F.R. §§ 416.1240, 416.1244(c). The provisions for conditional benefits apply where the individual's countable assets are valued at up to two times the amount of the applicable eligibility limit. 20 C.F.R. § 416.1240(a)
 
 
 [10]
 The rulings are in the form of letters from HEW Regional Medical Directors to state officials in New York and Michigan, and to a legal services program in California. Although some courts have upheld transfer of asset regulations similar to Maryland's, Rinefierd v. Blum, 66 A.D.2d 351, 412 N.Y.S.2d 526 (1979); Lerner v. Division of Family Services, 70 Wis.2d 670, 235 N.W.2d 478 (1975); But see Unida v. Walsh, 440 F.Supp. 1151 (E.D.Mo.1977); Buckner v. Maher, 424 F.Supp. 366 (D.Conn.1976), Aff'd 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 184 (1977); Owens v. Roberts, 377 F.Supp. 45 (M.D.Fla.1974), none of these cases involved the issue presented here, i. e., whether 42 U.S.C. § 1396a(a)(10)(C)(i) forbids the application of such a restriction to the aged, blind or disabled
 
 
 [11]
 Maryland argues that a contrary HEW interpretation is evidenced by that agency's annual approval, since 1969, of the state's Medicaid plan containing the restriction on asset transfers. We note first that the relevant statutory provision, 42 U.S.C. § 1396a(a)(10)(C)(i), was not adopted until 1973, shortly after the SSI program was established. As for approval of the state plan subsequent to 1973, "HEW's approval of (a state's) medical assistance plan . . . is not more than slightly persuasive when, as here, the so-called approval does not appear to have followed explicit attention to the question now confronted." Aitchison v. Berger, 404 F.Supp. 1137, 1148 (S.D.N.Y.1975), Aff'd 538 F.2d 307 (2nd Cir. 1976), Cert. den. 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). That slight persuasiveness becomes even more ethereal in the face of the agency's clear statements to the contrary
 
 
 [12]
 Plaintiffs do not challenge the state's methods for determining whether such intent existed. Counsel for plaintiffs stipulated that, assuming the women were competent at the time of the transfers, the transfers were made with the proscribed intent. Since retention of the assets would not have affected plaintiffs' eligibility for benefits, their intent presumably was to avoid the recovery provisions
 
 
 [13]
 As we have noted, Supra n.7, the state does not seek to penalize similar transfers made by SSI recipients, and it seems clear that it could not do so; the Social Security Act requires that all SSI recipients be included in the state's Medicaid program and the transfers would not affect SSI eligibility. 42 U.S.C. §§ 1382b(b), 1396a(a)(10); Social Security Claims Manual §§ 12507, 12508